[No. 7476. Decided January 6, 1909.]

ALMIRA MAGEE et al., *Appellants*, v. BIG BEND LAND COMPANY, *Respondent*.[1]

EXECUTORS AND ADMINISTRATORS—HUSBAND AND WIFE—ADMINISTRATION OF COMMUNITY PROPERTY. In the administration upon the estate of a widower, without there having been any previous administration upon the estate of his deceased wife, the court has jurisdiction to administer the whole of their community property.

JUDGMENTS—CONCLUSIVENESS—COLLATERAL ATTACK. An action to quiet title and recover possession of land sold at an administrator's sale, alleged to have been made without jurisdiction, is a collateral attack upon the probate proceedings.

COURTS—JURISDICTION—PRESUMPTIONS—JUDGMENTS. Upon a collateral attack of a proceeding in a court of general jurisdiction, jurisdiction will be presumed unless the contrary appears of record.

COURTS—JURISDICTION—EXECUTORS AND ADMINISTRATORS—SALE—COLLATERAL ATTACK—JUDGMENTS. The territorial probate court being a court of record, having a seal, with exclusive original jurisdiction over probate proceedings, its judgments therein need not affirmatively show the existence of facts upon which the exercise of jurisdiction depends, but the same are presumed unless the contrary appears; hence an administrator's sale of real estate and confirmation thereof by such court cannot be collaterally attacked for failure to appoint a guardian *ad litem* and give notice to a minor, such defects not appearing on the record.

EXECUTORS AND ADMINISTRATORS—SALE OF REAL ESTATE—JURISDICTION—PETITION. A petition for an administrator's sale of real estate to pay debts sufficiently shows jurisdiction to make the sale, where it appears that the personal property, consisting of stock, was lost without fault of the administrator, the money having been expended in an effort to save the stock, that no personal property remains in his hands, and that there is no way to pay the debts except by sale of the real estate.

[1]Reported in 99 Pac. 16.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered January 2, 1908, dismissing on the merits an action to quiet title, etc., after a trial before the court without a jury. Affirmed.

*Martin & Wilson*, for appellants.

*H. J. Hibschman* and *Merritt, Oswald & Merritt*, for respondent.

DUNBAR, J.—In the year 1883, Frank Rusho and his wife, Magdalene Rusho, purchased and moved upon the land involved in this suit, which was in Douglas county, Washington. Mrs. Rusho died in said Douglas county in the year 1887. Her estate was not probated up to the time of her husband's death, to wit, in 1889. A married daughter, whose name was Melder, died leaving surviving her the plaintiff Archie D. Melder, and it is not shown by the record that a guardian was appointed for said Archie D. Melder during the times hereinafter spoken of. In the early part of the year 1889, Frank Rusho moved from Douglas county to the county of Stevens, where he died June 16, 1889. The plaintiffs, save Melder, who was a grandchild, are all children of the said Frank Rusho and his wife, and a majority of them were minors when their parents died. After the death of the father, an administration of his estate took place in Stevens county, out of which an order of sale was issued, purporting to sell the real estate to the respondent for $1,400. For the purpose of removing a cloud from the real estate above set out, and to recover the rents and profits and the possession of the land, this action was commenced by the plaintiffs against the defendant. An answer was filed and a reply, and on the 11th day of September, 1907, at Waterville, Douglas county, said action was tried and a decree rendered dismissing the action and refusing the plaintiffs, the appellants here, relief of any kind. From this judgment, this appeal is taken.

Several errors are assigned by the appellants, but they all revolve around the question of whether the court had jurisdiction to sell the land which is the subject of the controversy. If it did, then the judgment of the lower court should be affirmed; if it did not, it should be reversed. The respondent set up two affirmative defenses, basing its title to the land, (1) on a sale made by the administrator of the estate of Frank Rusho; and (2) on an estoppel based on a distribution to the heirs of the money paid by it to the administrator. Evidence was introduced showing the facts stated in relation to the residence and death of Frank Rusho and his wife, and of their acquisition of the land mentioned.

It is earnestly contended by the appellants that the real property in controversy was the community property of Rusho and wife, and that the administration of the estate by Magee, who was appointed administrator by the probate court of Stevens county, was only an administration of the estate of Frank Rusho; that he had no authority under the probate proceedings to administer the estate of Magdalene Rusho, and that the proceedings thereunder, so far as her estate was concerned, were void and of no force and effect. In *Ryan v. Ferguson*, 3 Wash. 356, 28 Pac. 910, we held that upon the death of either husband or wife, where an administration was had of the community property, the same should be of the whole thereof and not merely of the half interest of the decedent, and that the whole community estate is subject to administration upon the death of either of the parties. To the same effect is *In re Hill's Estate*, 6 Wash. 285, 33 Pac. 585. So that, conceding the community character of the estate, under the authorities above mentioned it was subject to probate under Magee's administration.

It is, however, contended that the court acted without jurisdiction in this case, for the reason that the petition for the sale of the real estate did not conform to the requirements of the statute, and that the record does not show that Archie D. Melder, a minor, was ever served with notice of

the probate proceedings, and especially of the sale of said
land. ° It must be conceded that this is a collateral attack
(Van Fleet on Collateral Attack, §3), and that in such cases
the action of the court can be attacked only on questions of
jurisdiction.   As to courts of general jurisdiction, the great
weight of authority is to the effect that jurisdiction will be
presumed unless the contrary appears of record.   If that rule
is applicable to the old probate territorial courts, then the
appellants have no standing, for it does not affirmatively ap-
pear by the record in any way, that the minor heir was not
notified of all the essential actions of the court.   There is no
proof that the minors had no general guardian or guardian
*ad litem*, or that notice was not served on the guardian, or
that there was no voluntary appearance.   On this subject the
record is silent, but the judgment is to the effect that all
jurisdictional requirements have been met.

To determine the standing of the probate court, we must
examine the jurisdiction that was conferred upon it by the
law-making power.   In chapter 95 of the Code of 1881, under
the title "Probate Practice Act," provision is made for the ap-
pointment of a probate judge and the formation of a probate
court. . Section 1299 of said chapter provides that the said
probate court shall have and possess the following powers:
(1) Exclusive original jurisdiction within their respective
counties in all cases relative to the probate of last wills and
testaments; (2) the granting of letters testamentary and
of administration, and revoking the same.   After conferring
other powers, it is provided in subd. 8, that "the said court
shall provide and keep a suitable seal, that the court estab-
lished by this act shall be a court of record, and shall keep
just and faithful records of its proceedings, and shall have
power to issue any and all writs which may be necessary to
the exercise of its jurisdiction."   While in a sense general
jurisdiction was not given to this court, exclusive original
jurisdiction was given to it over the subject mentioned, viz.,
probate proceedings, and it is well established that such

jurisdiction as this carries with it the presumption of the integrity of the judgment, the same as does the judgment of a court of general jurisdiction.

"In so far as probate courts have general jurisdiction their records need not affirmatively show the existence of facts upon which the exercise of their jurisdiction depends. And the rule applies even though the court is one of limited jurisdiction where it is invested with full authority over probate and testamentary matters and is a court of record." 11 Cyc. 697.

The rule is again laid down in 11 Cyc., at page 694, as follows:

"The rules as to the presumption in favor of the jurisdiction of courts of general jurisdiction apply to courts of probate and those with like powers, where they are courts of general jurisdiction or possess the attributes thereof, even though they have not exclusive jurisdiction or have a limited, but not a special, jurisdiction, or their powers are limited to certain specified subjects."

It was held in *State ex rel. Bell v. Nolan*, 99 Mo. 569, 12 S. W. 1047, in accordance with this general announcement, that in so far as probate courts have general jurisdiction, their records need not affirmatively show the existence of facts upon which the exercise of their jurisdiction depended, and that the rule applies even though the court is one of limited jurisdiction where it is vested with full authority over probate and testamentary matters, and is a court of record. It cannot be questioned that our territorial probate court was a court of record, for the statute specially requires it to keep a record, and that it had full authority over probate and testamentary matters. It therefore must follow that, unless it affirmatively appears that the court acted without jurisdiction in some matters subsequent to the inauguration of the probate proceedings, the judgment of the probate court in selling and confirming the sale of the land must be presumed to have been based on jurisdiction conferred. The case of *Ball v. Clothier*, 34 Wash. 299, 75 Pac. 1099, is cited and largely relied upon by the appellants, and at first glance

that case might seem to be in point, but a closer investigation shows that, while it was there determined that the action of the court in selling the land where no guardian had been appointed for a minor and no notice given was illegal and void; yet in that case there was no discussion of the presumption of jurisdiction, for it was an established and admitted fact that no guardian had been appointed and no notice given as required by the law.

It is contended, however, by the appellants that the record affirmatively shows that the petition for the sale of real estate did not contain the requirements of the statute, but in this we are satisfied from an examination of the exhibit that the appellants are mistaken, and that all the material requirements of the statute were met. It is true that the petition does not state that there had been no personal property, or that it had been sold, but it does state that there was no way to pay the debts of the community except by the sale of real estate, and that the personal property consisting of live stock had been lost without fault of his. The particular portion of the petition was as follows:

"That at the time your petitioner was appointed, the said cattle and horses belonging to said decedent's estate were in the Kalispell Valley, state of Washington, where the said deceased had taken them prior to his death, and made some temporary arrangements for their care, during the winter of 1889 and 1890, that during said winter of 1889 and 1890, owing to the unusual severity and length of the winter, and owing to the unusual severity of the cold weather and great depth of fall of snow, notwithstanding the best efforts of your petitioner all of said stock were lost, through no fault of his, and in endeavoring to save said cattle, your petitioner expended the greater portion of said money belonging to said estate, and no personal property now remains in the hands of your petitioner belonging to said decedent's estate."

The petition further proceeds to show the condition of the estate, and the necessity for selling the land to meet the

expenses. We think the petition was amply sufficient to give the court jurisdiction to order a sale of the real estate.

The view we take of the jurisdictional question renders unnecessary the discussion of the further contention of the respondent that the appellants are estopped from bringing this action by reason of having received the proceeds of the sale of the land, the appellants at that time all appearing at the decree of distribution, the minor Archie D. Melder appearing by his guardian *ad litem*.

The judgment will be affirmed.

CROW, MOUNT, and FULLERTON, JJ., concur.